CITY OF AUSTIN, Appellant

v.

**TRAVIS CENTRAL APPRAISAL DIS-TRICT; The State of Texas; and Individuals Who Own C1 Vacant Land and/or F1 Commercial Real Property within Travis County, Texas, Appellees**

NO. 03–16–00038–CV

Court of Appeals of Texas, Austin.

Filed: November 10, 2016

James Popp, Daniel R. Smith, Mark S. Hutcheson, Popp Hutcheson PLLC, Austin, TX, Thomas M. Michel, Griffith, Jay & Michel, LLP, Fort Worth, TX, G. Todd Stewart, Tammy White-Chaffer, Deborah S. Cartwright, Olson & Olson LLP, Houston, TX, Bill Aleshire, Riggs Aleshire & Ray, PC, Austin, TX, Raymond R. Gray, Lorri Michel, Shane Rogers, Michel Gray Rogers & Brewer, LLP, Austin, TX, William Noe, Joseph M. Harrison, IV, Harrison & Duncan, PLLC, Floresville, TX, Kristofer S. Monson, Assistant Solicitor General, Office of the Attorney General, Austin, TX, for appellees.

Michael Siegel, Andralee Lloyd, City of Austin, Law Department, Austin, TX, for appellant.

Before Justices Puryear, Pemberton, and Field

## OPINION

Scott K. Field, Justice

In the suit underlying this appeal, the City of Austin filed a petition for judicial review of an order from the Travis Appraisal Review Board denying the City's challenge to the level of appraisals for vacant land and commercial real property for the 2015 tax year. *See* Tex. Tax Code § 41.03(a). The City also sought declaratory and injunctive relief, challenging certain provisions of the Texas Tax Code as unconstitutional under Article 8, Section 1, of the Texas Constitution. *See* Tex. Const. art. VIII, § 1. After the district court granted a plea to the jurisdiction filed by a group of commercial property owners and a motion for summary judgment filed by another commercial property owner, the court dismissed the suit for lack of jurisdiction. In three issues on appeal, the City claims that the district court erred in dismissing its suit. We will affirm.

## BACKGROUND

In May 2015, the City filed a petition with the Review Board challenging the

Travis Central Appraisal District's level of appraisals for the 2015 tax year on certain categories of real property in Travis County. *See* Tex. Tax. Code §§ 41.03(a) (permitting challenge by taxing unit to "the level of appraisals of any category of property"), 41.04 (challenge petition). At the hearing on the challenge petition, the City and the Appraisal District presented an agreed motion to the Review Board, requesting the entry of an order denying the challenge. At the close of hearing, the Board denied the City's challenge petition. *See id.* §§ 41.05 (hearing on challenge), 41.07 (determination of challenge).

The City later filed its suit for judicial review pursuant to Texas Tax Code, section 42.031.[1] *See id.* §§ 42.031(a) ("A taxing unit is entitled to appeal an order of the appraisal review board determining a challenge by the taxing unit."), 42.21 ("A party who appeals as provided by this chapter must file a petition for review with the district court …."). Specifically, the City alleged that the Appraisal District's 2015 level of appraisals of C1 vacant land and F1 commercial real property in Travis County was unequal when compared to other categories of property. *See id.* § 41.03(a). The City requested that the district court order a reappraisal of all such properties in Travis County. *See id.* § 41.07. In addition, the City added claims for declaratory and injunctive relief, challenging section 41.43(b)(3) and section 42.26(a)(3) of the Tax Code as invalid under the Texas Constitution. The City alleged that the challenged Tax Code provisions "have incentivized taxpayer protests and led to widespread diminution of appraised property values to a 'median value' that is below market value." According to the City, the reduction in appraised values to median values "has resulted in unequal taxation in violation of the Texas Constitution." *See* Tex. Const. art. VIII, § 1.

The City subsequently filed a motion asking the district court to determine that individual property owners were not necessary as defendants in the lawsuit. *But see* Tex. Tax Code § 42.21(b) ("A petition for review brought under Section 42.031 must be brought against the appraisal district and the owner of the property involved in the appeal."). In its motion, the City explained that "it would be a tremendous burden on all parties involved to require more than 11,000 property owners to be made parties." Alternatively, the City requested that it be allowed to serve the property owners through substituted service. On October 20, 2015, the district court denied the City's motion, including its alternative request for substituted service.

Several commercial property owners appeared, waived service, and answered as defendants in the lawsuit: Junk Yard Dogs, LP; Texas Association of Realtors; Lowe's Home Centers, LLC; and H E Driskill, LLC. Junk Yard Dogs subsequently filed a traditional motion for summary judgment seeking dismissal of the City's claims.[2] *See* Tex. R. Civ. P. 166a.

---

1. On the same day that the City filed its original petition, the City filed what purports to be a list of "all Defendants, and their registered agent, if any, owning property within Travis County, Texas identified by the [Appraisal District] as C1 vacant land or F1 commercial real property." The list includes approximately 11,000 property owners. The City stated that it was not requesting service of the petition on any of the property owners.

2. This was Junk Yard Dogs's second motion for summary judgment. In its first motion for summary judgment, Junk Yard Dogs asserted that the City's suit was barred as a matter of law because the City failed to timely file its suit for judicial review, failed to timely provide notice of its suit to all property owners, and failed to diligently serve all property owners. Junk Yard Dogs's first motion for summary judgment was denied by the district

With regard to the City's claim for judicial review, Junk Yard Dogs argued that the district court lacked jurisdiction over this claim because, according to Junk Yard Dogs, (1) "the City presented no evidence at the hearing [before the Review Board] on its challenge petition and therefore failed to exhaust its administrative remedies" and (2) the City is requesting an advisory opinion because there is no statutory authorization to now reassess 2015 taxes. With regard to the City's constitutional claims, Junk Yard Dogs asserted in its motion for summary judgment that the district court lacked jurisdiction over these claims because (1) the City failed to exhaust its administrative remedies under the Tax Code by not raising its constitutional claims before the Review Board; (2) the uniform declaratory judgment act does not independently confer jurisdiction, and the Tax Code's remedies are exclusive; and (3) the City has not suffered a particularized, concrete injury and therefore lacks standing. In addition, Junk Yard Dogs argued that the City's claim for declaratory relief was too broad because it would affect all property owners in the County and that the challenged tax provisions are constitutional as a matter of law.

Subsequently, the other commercial property owner defendants (Texas Association of Realtors, Lowe's, and H E Driskill), collectively, filed a plea to the jurisdiction. The group of commercial property owners asserted that the City lacked standing to bring its constitutional challenges to section 41.43(b)(3) and section 42.26(a)(3) of the Tax Code because "it is not the governmental entity charged with implementing the property tax appraisal

system or enforcing its statutory remedies." On November 6, 2015, the district court granted Junk Yard Dogs's motion for summary judgment and dismissed the City's suit for lack of jurisdiction and, the same day, granted the group of commercial property owners' plea to the jurisdiction.[3] The City subsequently filed a motion for new trial, which was overruled by operation of law.

On appeal, the City claims that the district court erred in (1) ruling that individual property owners were necessary as parties to the suit; (2) dismissing its judicial-review claim for lack of subject-matter jurisdiction; and (3) dismissing its constitutional challenge and associated requests for injunctive and declaratory relief for lack of subject-matter jurisdiction.

## STANDARD OF REVIEW

Subject–matter jurisdiction is essential to "a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A court acting without such power commits fundamental error that we may review for the first time on appeal. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–444 (Tex. 1993). Subject–matter jurisdiction presents a question of law we review de novo. *Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).

In reviewing a trial court's ruling on a plea to the jurisdiction, we begin our analysis with the plaintiff's live pleadings and determine whether the facts alleged affirmatively demonstrate the trial court's

---

court. Junk Yard Dogs has not appealed the denial of its first motion for summary judgment.

**3.** On October 29, 2015, the State of Texas filed a petition in intervention. *See* Tex. R.

Civ. P. 60; Tex. Civ. Pac. & Rem. Code § 37.006(b) (attorney general must be served with copy of proceeding in proceeding in which "statute, ordinance, or franchise is alleged to be unconstitutional").

jurisdiction to hear the cause.[4] *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Id.* at 226–27. If, however, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to re-plead. *Id.* at 227.

■ In addition, we may also consider evidence that the parties have submitted and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. The ultimate inquiry is whether the particular facts presented affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction. *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.–Austin 2013, no pet.).

■ To the extent resolution of the jurisdictional issues in this case turns on statutory construction, we review these questions de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 868 (Tex. 2009). The plain meaning of the text is the best expression of legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or unless the plain meaning would lead to "absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code § 311.011. "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

## STATUTORY BACKGROUND ON APPRAISAL SYSTEM

■ An "ad valorem tax" is a tax on property at a certain rate based on the property's value. *Jim Wells Cty. v. El Paso Prod. Oil & Gas Co.*, 189 S.W.3d 861, 870 (Tex. App.–Houston [1st Dist.] 2006, pet. denied). The value of the property, and thus the basis for the amount of ad valorem tax owed, is the appraised value of the property. *Id.* Appraisal of real property for ad valorem tax purposes is carried out by county-based appraisal districts and appraisal review boards throughout the State. *See* Tex. Tax Code § 6.01(b) (stating that each appraisal district "is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district").

"[E]xcept for certain specifically circumscribed rights," the Tax Code's comprehensive legislative scheme generally excludes taxing units, like the City, from the appraisal process. *Jim Wells*, 189 S.W.3d at 871. Chapter 41, subchapter A, of the

---

4. To the extent Junk Yard Dogs's traditional motion for summary judgment sought dismissal of the City's claims for lack of subject-matter jurisdiction, we treat the motion as a plea to the jurisdiction. *See Moore v. Univ. of Houston–Clear Lake*, 165 S.W.3d 97, 100 n.4 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (noting that generally courts should look to substance of pleading rather than caption or format to determine its nature); *see also Bosch v. Frost Nat'l Bank*, No. 01–14–00191–CV, 2015 WL 4463666, at *1 (Tex. App.–Houston [1st Dist.] July 21, 2015, no pet.) (mem. op.) (construing motion to strike on ground that plaintiff lacked standing as plea to the jurisdiction).

Tax Code provides taxing units, like the City, with a mechanism for challenging certain actions by their local appraisal districts. *See* Tex. Tax Code §§ 41.03–.07. For example, a taxing unit may challenge "the level of appraisals of any category of property in the district . . ., but not the appraised value of a single taxpayer's property." *See id.* § 41.03(a)(1). The challenge is initiated by the taxing unit's filing a petition with the appraisal review board, *see id.* § 41.04, which subsequently conducts a hearing on the challenge petition, *see id.* § 41.05, determines the challenge, and makes its decision by written order, *see id.* § 41.07. The taxing unit may then appeal the review board's decision to the district court in the county in which the review board is located. *Id.* §§ 42.031 (right of appeal by taxing unit), 42.21 (petition for review). The district court reviews the board's decision by trial de novo. *Id.* § 42.23.

Separately, chapter 41, subchapter C, of the Tax Code provides property owners with the right to protest certain actions by their local appraisal district. *Id.* §§ 41.41–.47. Among other things, property owners can protest the appraisal district's determination of their property's value or protest that the appraisal district has unequally appraised their property. *Id.* § 41.41(a)(1), (2). In these types of protests by property owners, the burden is on the appraisal district to establish by proof and production the value of the property before the appraisal review board. *Id.* § 41.43(a), (a–3). If a property owner is dissatisfied with the outcome of his protest, he may seek binding arbitration, *id.* § 41A.01, or appeal the order of the review board to district court, *id.* § 42.01(a)(1). However, "[a] taxing unit may not intervene in or in any other manner be made a party, whether as a defendant or otherwise, to an appeal [brought by the property owner] of an order of the appraisal review board determining a taxpayer protest under [Chapter 41], if the appeal was brought by the property owner." *Id.* § 42.031(b).

With this administrative framework in mind, we turn to the parties' arguments with respect to the district court's jurisdiction to consider the City's claims.[5]

## ANALYSIS

### *Constitutional Claims*

In its suit in district court, the City challenged the constitutionality of two Tax Code provisions, sections 41.43(b)(3) and 42.26(a)(3). *See id.* §§ 41.43(b)(3), 42.26(a)(3). We first consider whether the district court erred in dismissing the City's constitutional challenge for lack of subject-matter jurisdiction.

In 1997, Senate Bill 841 amended the Tax Code with the intention of facilitating tax remedies for property owners. *See* Tex.

---

**5.** In its first issue on appeal, the City argues that the district court "erroneously ruled that every owner of either C1 vacant land or F1 commercial property was a necessary and proper party to the City's challenge to the level of appraisals" and, consequently, "brought over 20,000 individual property owners into the suit." Although not entirely clear, the City's argument appears to be premised on the assumption that had the district court determined that individual property owners could not participate in this suit, the court would not have entertained the commercial property owners' jurisdictional challenges and that consequently, the suit would not have been dismissed for lack of jurisdiction. However, even if we were to agree with the City's assertion that the district court erred in concluding that all property owners were necessary parties to the City's suit, we could not necessarily conclude based on this error that the district court had jurisdiction to consider the City's claims. Because the City's jurisdictional issues are potentially dispositive to this appeal, we will first address the City's second and third issues on appeal.

S.B. 841, 75th Leg., R.S. (1997); *see also Harris Cty. Appraisal Dist. v. United Inv'rs Realty Trust*, 47 S.W.3d 648, 652 (Tex. App.–Houston [14th Dist.] 2001, pet. denied) (describing Senate Bill 841). This legislation, known as the Taxpayer's Bill of Rights, included amendments to section 41.43, entitled "Protest and Determination of Value or Inequality of Appraisal," and section 42.26, entitled "Remedy for Unequal Appraisal." *See* Act of May 25, 1997, 75th Leg., R.S., ch. 1039, §§ 37, 42, 1997 Tex. Gen. Laws 3897, 3915–3917; *United Inv'rs Realty Trust*, 47 S.W.3d at 652.

In relevant part, section 41.43 states:

(b) A protest on the ground of unequal appraisal of property shall be determined in favor of the protesting party unless the appraisal district establishes that:

[among other potential ways]

(3) the appraised value of the property is equal to or less than the median appraised value of a reasonable number of comparable properties appropriately adjusted.

Tex. Tax Code § 41.43(b)(3). In substantially similar wording, section 42.26(a)(3) applies the same standard to an appeal of a property owner's protest in district court. *See id.* § 42.26(a)(3). In other words, under section 41.43(b)(3) and section 42.26(a)(3), an appraisal district may meet its burden and defeat a property owner's protest based on unequal appraisal by establishing that the median appraised value of a reasonable number of comparable properties exceeds the appraised value of the property at issue.

In the suit underlying this appeal, the City claimed that, based on studies it had conducted, certain categories of property in the district had been undervalued for purposes of the 2015 tax appraisals. According to the City, the Appraisal District's application of section 41.43(b)(3) and section 42.26(a)(3) to resolve taxpayer protests has resulted in a reduction of property value to "median value"—which the City asserts is below "market value"—for certain categories of property. In its pleadings in district court, the City alleged that this reduction in property value for certain properties violates constitutional requirements that property be taxed at market value and that taxation be equal and uniform.[6] The City sought a declaration that section 41.43(b)(3) and section 42.26(a)(3) are unconstitutional and an injunction prohibiting the Appraisal District from "giving any force and effect" to the challenged provisions.

Junk Yard Dogs moved for summary judgment on the City's constitutional claims, in part, on the ground that the trial court lacked subject-matter jurisdiction to consider the claims. Junk Yard Dogs argued in its motion that the City failed to plead a specific injury "to show that it has standing to bring its constitutional claims challenging appraisal statutes guaranteeing constitutional rights of taxpayers and the evidence upon which the [appraisal district] determines its values." According to Junk Yard Dogs, "[t]he City cannot point to a particularized or concrete injury specific to the City, as required for subject matter jurisdiction" because the City "has neither a constitutional nor statutory mandate in the area of property tax appraisal." Similarly, the other commercial property owners, in their plea to the jurisdiction,

---

**6.** Section 1 of Article VIII of the Texas Constitution provides that "(a) [t]axation shall be equal and uniform[; and] (b) [a]ll real property and tangible personal property in this State ..., shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Tex. Const. art. VIII, § 1(a), (b). In addition, the value of assessed property for tax purposes is limited to "fair cash market value." *Id.* art. VIII, § 20.

asserted that "[t]he City lacks standing to bring these [constitutional] claims because it is not the governmental agency charged with implementing the property tax appraisal system or enforcing its statutory remedies." In its third issue on appeal, the City asserts that the district court erred to the extent it dismissed its constitutional claims for lack of standing.

 Standing is a component of subject-matter jurisdiction, *Sneed v. Webre*, 465 S.W.3d 169, 80 (Tex. 2015), and a constitutional prerequisite to suit, *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). "The requirement in this State that a plaintiff have standing to assert a claim derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a 'person for an injury done him.' " *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 444, and Tex. Const. art. I, § 13)). A court has no subject-matter jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *Heckman*, 369 S.W.3d at 150. Thus, if a plaintiff lacks standing to assert one of his claims, then the trial court lacks jurisdiction over that claim and must dismiss it. *Id.* (explaining that claim-by-claim analysis of standing is necessary).

 Standing is concerned not only with whether a justiciable controversy exists, but also with whether the particular plaintiff "has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). In Texas, the general test for standing requires that (a) there be "a real controversy between the parties," that (b) "will actually be determined by the judicial

declaration sought." *Id.* at 849 (citing *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996)). Unless standing is conferred by statute, "a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Sneed*, 465 S.W.3d at 180 (citing *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001)). The injury itself "must be concrete and particularized, actual or imminent, not hypothetical." *Heckman*, 369 S.W.3d at 155 (citing *Inman*, 252 S.W.3d at 304–305).

In this case, the City asserts that its "constitutional challenge is brought to ensure equal and uniform taxation to all Austin residents, not to raise additional tax revenue." The City claims that it, in effect, implements the challenged Tax Code provisions because it ultimately imposes the resulting property taxes on property owners and that the provisions directly injure the City "by forcing the City to impose[ ] taxes in a manner it deems to be unconstitutional."

 We conclude that the City has failed to establish an injury sufficient to confer standing to challenge section 41.43(b)(3) and section 42.26(a)(3) of the Tax Code. Generally, a municipal corporation or other governmental subdivision has standing to bring a constitutional challenge based on a provision outside the bill of rights and its guarantees to "persons" and "citizens," if the subdivision has been "charged with implementing a statute it believes violates the Texas Constitution." *Proctor v. Andrews*, 972 S.W.2d 729, 734 (Tex. 1998). In this case, however, the Tax Code provisions challenged by the City concern the appraisal process and, specifically, provide the mechanism by which taxpayer protests of appraisals, under certain circumstances, are to be resolved by ap-

praisal review boards and, on review, by district courts. The provisions do not describe or concern any mechanism by which taxing units, such as the City, are to access, impose, or collect ad valorem taxes based on these appraised property values. Viewing the statute as a whole, we cannot conclude that the legislature has charged the City with "giv[ing] practical effect to [or] ensur[ing] actual fulfillment [of section 41.43 or section 42.26] by concrete measures." *See Harris Cty. Emergency Servs. Dist. No. 2 v. Harris Cty. Appraisal Dist.*, 132 S.W.3d 456, 461–62 (Tex. App.–Houston [14th Dist. 2001], pet. denied) (citing definition of "implement" in Webster's Third New Int'l Dictionary 1134 (1993)). As a result, the City cannot establish that it has standing to challenge the constitutionality of section 41.43(b)(3) and section 42.26(a)(3) on the ground that it has been "charged with implementing" these provisions. *See id.* (citing *Nootsie, Ltd.*, 925 S.W.2d at 662).

In addition, the fact that the City will eventually, under some separate authority, calculate and impose ad valorem taxes based on property values determined by the appraisal district—some values of which may be determined under section 41.43(b)(3) and 42.26(a)(3)—fails to establish that the City has a stake in the controversy sufficient to confer standing. *See Harris Cty. Emergency Servs. Dist.*, 132 S.W.3d at 462 (fact that taxing entity was aggrieved by appraisal district's implementation of challenged tax code provisions did not afford taxing entity sufficient stake in controversy). In other words, the City's assertion that it will directly suffer an injury by "being forced to impose [unconstitutional] taxes" fails to demonstrate an injury that is concrete and particularized to the City, as opposed to the City's property owners. *See Heckman*, 369 S.W.3d at 154–155 (detailing test for injury necessary for standing). Because any decision by the

district court on the City's constitutional challenge would amount to an advisory opinion, the district court did not err in concluding that it lacked subject-matter jurisdiction to consider the City's constitutional claims. We overrule the City's third issue on appeal.

### Suit for Judicial Review

Next, we turn to the City's claim that the district court erred in dismissing its suit for judicial review for lack of jurisdiction on the ground that the City failed to exhaust its administrative remedies.

When the Legislature grants an administrative agency sole authority to make an initial determination in a dispute, the agency's jurisdiction is exclusive. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). If an agency has exclusive jurisdiction, a party must exhaust its administrative remedies before seeking recourse through judicial review. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). The purpose of the exhaustion-of-remedies requirement is to allow the agency to resolve disputed issues of fact and policy and to ensure that the appropriate body adjudicates the dispute. *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 780 (Tex. App.–Austin 2004), *aff'd on other grounds*, 209 S.W.3d 83 (Tex. 2006). The exhaustion doctrine also serves as a timing mechanism to ensure that the administrative process runs its course. *See id.* Absent exhaustion of administrative remedies, a trial court must dismiss the case. *See Tex. Educ. Agency v. Cypress–Fairbanks I.S.D.*, 830 S.W.2d 88, 90 (Tex. 1992).

The Tax Code is a pervasive regulatory scheme, vesting appraisal review boards with exclusive jurisdiction to decide protests and challenges as permitted under chapters 41 and 42. *Appraisal Review Bd. v. O'Connor & Assocs.*, 267 S.W.3d

413, 416–417 (Tex. App.–Houston [14th Dist.] 2008, no pet.). As previously discussed, the Tax Code provides taxing units, like the City, with a limited statutory right to challenge certain actions of the appraisal district before a local review board and with standing to seek judicial review of the review board's determination on its challenge in district court. *See* Tex. Tax. Code §§ 41.03, 42.031, 42.21; *see KM–Timbercreek, LLC v. Harris Cty. Appraisal Dist.*, 312 S.W.3d 722, 726 (Tex. App.–Houston [1st Dist.] 2009, no pet.) (only party with right under tax code to protest valuation or to seek judicial review of protest determination has standing to appeal under section 42.21). However, to properly invoke the subject-matter jurisdiction of the district court, the taxing unit must exhaust its administrative remedies before filing its suit for judicial review. *See MAG–T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 624 (Tex. App.–Austin 2005, pet. denied) (explaining that taxpayers must exhaust administrative remedies before seeking judicial review on protest).

◼ In its motion for summary judgment, and now on appeal, Junk Yard Dogs asserts that the City failed to exhaust its administrative remedies because the City failed to present any evidence or sworn testimony to the appraisal review board at the hearing. Moreover, Junk Yard Dogs points out that the City requested that the review board deny its challenge petition. According to Junk Yard Dogs, "the City consciously and deliberately skipped any substantive hearing before the [review board] and, therefore, failed to exhaust its administrative remedies and failed to preserve its right to appeal to the district court or to this Court." In effect, Junk Yard Dogs asserts that the City failed to substantively appear at administrative

hearing to present its challenge to the Review Board.

In response, the City contends that the district court erred to the extent it concluded that the City failed to exhaust its administrative remedies. According to the City, it fully complied with all administrative requirements, including any requirement that it appear before the Review Board on its petition. The City argues that while the Tax Code provides that a taxing unit is "entitled to an opportunity to appear [at the hearing] to offer evidence or argument," there is nothing requiring that a taxing unit present evidence in order to seek judicial review.

The Texas Supreme Court has provided guidance on what is required for exhaustion of remedies in the context of a taxpayer protest suit. *See Webb Cty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 955 (Tex. 1990) (holding that taxpayer's appearance at protest hearing was prerequisite to appeal to district court). In *Webb County Appraisal District v. New Laredo Hotel*, the Texas Supreme Court considered whether a taxpayer had exhausted its administrative remedies under chapter 41 when the taxpayer had failed to appear in person or to file an affidavit in support of its protest petition. *Id.* at 954. In part, the taxpayer relied on a Tax Code provision stating that "the property owner initiating the protest is entitled to an opportunity to appear [at the protest hearing] to offer evidence or argument," *see* Tex. Tax Code § 41.45(b), for the proposition that a protesting taxpayer's appearance at a protest hearing was optional. *See New Laredo Hotel*, 792 S.W.2d at 953. The Court, however, rejected this argument and concluded that the taxpayer had not exhausted its administrative remedies when it failed to appear in person or by affidavit at the hearing before the review board. *Id.* at 955. The Court explained that

the purpose of the administrative review process under chapter 41 is to resolve the majority of property-owner protests at the administrative level, "thereby relieving the burden on the court system." *Id.* at 954. The effect of accepting the taxpayer's position that an appearance is not required "would be the emasculation of the administrative hearing process." *Id.* "Filing a protest would become merely one more hoop to jump through before appealing to district court." *Id.* Thus, the Court's concerns about the taxpayer's failure to appear in *New Laredo Hotel* centered not on the taxpayer's lack of actual presence but on the fact that, as a consequence, the review board had not been provided any opportunity to make a decision on the merits of the protest.

The record before us reveals that, although attorneys and representatives from the City attended the hearing on the City's challenge petition, the City did not present a case on the merits of its challenge. The City did not offer any exhibits, sworn testimony, or argument in support of its petition at the hearing before the Review board. *See* Tex. Tax Code § 41.05 (providing that taxing unit is entitled to "opportunity to appear [at hearing on challenge petition] to offer evidence or argument"). Instead, the City presented a joint motion requesting that the Review Board enter an order denying its challenge petition. The attorney for the Review Board explained to the Board members that the City and the Appraisal District had agreed to submit an order "provid[ing] generally that the challenge should be denied in order for the parties to proceed to district court." The Review Board then received public comments from several individuals, including the mayor pro tem for the City. The mayor pro tem urged the Review Board to deny the City's challenge petition so that

the chief appraiser could certify the tax roll with 2015 values and so that the parties could have the issues decided in district court, which the City considered to be a better forum for the dispute. Finally, attorneys for the Appraisal District and the City each presented a statement to the Review Board, again arguing that the Board should deny the City's challenge petition so that the Appraisal District could move forward on certifying the tax rolls and so that the parties could proceed in district court.

The City appeared at the hearing for the sole purpose of requesting that the Review Board deny its challenge petition and, as a result, deprived the Review Board of any opportunity to decide the merits of its challenge petition. The City then sought to appeal the Review Board's decision in district court, despite the fact that the Board had ruled in accordance with the City's request. *Cf. Texas Comm'n on Evntl. Quality v. Bonser–Lain,* 438 S.W.3d 887, 894–95 (Tex. App.–Austin 2014, no pet.) (explaining that generally, party may not appeal judgment awarding full relief sought by party). The City's position that it sufficiently exhausted its administrative remedies because it was present at the administrative hearing at which it requested the denial of its own challenge, if accepted, would thwart the intent of the administrative process and of the exhaustion requirement. Moreover, acceptance of the City's position "would be an emasculation of the administrative hearing process," and would make the filing of a challenge petition "merely one more hoop to jump though before appealing to district court." *See New Laredo Hotel,* 792 S.W.2d at 954. We conclude that by affirmatively requesting that the Review Board deny its challenge petition, the City failed to "appear," as contemplated by the Texas Supreme

Court in *New Laredo Hotel*.[7] As a result, the City failed to exhaust its administrative remedies, and the district court lacked jurisdiction to consider the City's suit for judicial review. The City's second issue on appeal is overruled.[8]

## CONCLUSION

The City's constitutional challenge is a transparent attempt by a taxing unit to debate an issue of tax policy that is within the prerogative of the Legislature, rather than the Judiciary. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444 (explaining that separation-of-powers doctrine prohibits courts from issuing advisory opinions "because such is the function of the executive rather than the judicial department"); *Bacon*, 411 S.W.3d at 172 (noting that "the Legislature, not the Judiciary, is best suited to make [certain] policy-laden judgments"). The City may bring its concerns over tax policy to the attention of the Legislature, but it has no standing to pursue such a debate in this Court. Although the City does have statutory standing to challenge the level of appraisals of any category of property in the district, the City decided to effectively forego the administrative determination of its challenge, depriving the district court of jurisdiction. *See* Tex. Tax Code § 42.031.

Having concluded that the district court did not err in dismissing the City's claims for lack of subject-matter jurisdiction, we affirm the judgment of the district court.

Affirmed

7. Alternatively, the City argues that, even if the presentation of evidence and argument is required, it did in fact present evidence and argument at the hearing. However, the only argument presented by the City to the Review Board was argument explaining why the district court was a better forum for the City's challenge petition and supporting its joint motion to deny its challenge petition. In addition, the "evidence" that the City refers to is "Internet hyperlinks to published government records that outlined the parties' respective positions on the valuation of the C1 and F1 property categories." The hyperlinks were not offered as evidence at the hearing, but were instead presented by the parties in their joint motion requesting entry of an order denying

the City's challenge. Because we conclude that the City failed to exhaust its administrative remedies when it appeared at the hearing for the purpose of requesting the denial of its own challenge, we need not decide whether the hyperlinks would otherwise constitute evidence or even whether the offering of evidence and argument in support of a petition is necessarily required before a taxing unit may seek judicial review.

8. Because we conclude that the district court lacked jurisdiction to consider any of the City's claims, we do not decide the City's first issue on appeal. *See* Tex. R. App. P. 47.1.