# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00531-CV

---

**The State of Texas, Appellant**

**v.**

**The City of Houston, The City of San Antonio, and The City of El Paso, Appellees**

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-23-003474, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING**

---

## O P I N I O N

On June 14, 2023, Texas Governor Greg Abbott signed into law House Bill No. 2127, the Texas Regulatory Consistency Act. *See* Texas Regulatory Consistency Act, 88th Leg., R.S., ch. 899, 2023 Tex. Sess. Law Serv. 2873 (TRCA). The Act's stated purpose is to replace a perceived "patchwork" of local regulations with "statewide consistency by returning sovereign regulatory powers to the state." *Id.* §§ 2(3), 3. To achieve this purpose, the Act (1) amends various statutes to preempt certain local regulations and (2) creates a cause of action for any person injured by a preempted regulation. *Id.* §§ 5–10, 13–15.

Before the Act took effect, the City of Houston, later joined by the Cities of San Antonio and El Paso, filed a pre-enforcement action against the State of Texas under the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, seeking declarations that the Act violates various provisions of the Texas Constitution. The State and

Cities filed cross-dispositive motions, and the trial court rendered a final judgment declaring the Act unconstitutional in its entirety.

On appeal, the State argues that we must reverse the trial court's judgment and dismiss the suit for lack of subject-matter jurisdiction because the Cities' live pleading affirmatively negates their standing to sue. We agree for two reasons.

First, the Cities failed to show an injury-in-fact. When, as here, a plaintiff challenges the constitutionality of a statute, to establish a concrete and particularized injury, the plaintiff must show the statute's application in the particular context in which the plaintiff has acted, or in which it proposes to act, would be unconstitutional. But the Cities don't allege injuries arising from the Act's unconstitutional application to them—they don't allege that the Act's application to an actual local regulation would be unconstitutional. Instead, they allege that the Act is unconstitutional on its face and that they will have to review their charters, repeal preempted regulations, and suffer other such generalized injuries if forced to comply with its terms. These injuries lack sufficient concreteness and particularization for standing purposes. Without an actual local regulation to which to apply the Act, and thereby evaluate its constitutionality, no concrete dispute exists for us to resolve.

Second, the Cities failed to show that their alleged injuries are fairly traceable to the State. The Cities do not allege that the State has threatened to enforce the Act against them. And the various pre-enforcement injuries the Cities have alleged are traceable not to anything the State has done but to the coercive impact of the Act itself (coercive in that it exposes the Cities to civil litigation brought by parties injured by preempted regulations).

While the Cities' failure to properly plead the first element of standing (injury-in-fact) may be curable, their failure to properly plead the second element (traceability) is not:

2

No amount of repleading will show that the State of Texas is a proper defendant. Therefore, we hold that the Cities' live pleadings affirmatively negate the Cities' standing to sue.[1] We reverse the trial court's final judgment and dismiss the Cities' claims without prejudice for lack of subject-matter jurisdiction.

## BACKGROUND

**The Texas Regulatory Consistency Act**

The Act has two provisions that are particularly relevant to the issues presented in this appeal: what we will term (1) the Preemption Clause and (2) the Enforcement Clause.

***The Preemption Clause***

The Preemption Clause, as the moniker suggests, is the provision by which the Act preempts local regulations. Added to eight subject-matter codes—Agriculture, Business and Commerce, Finance, Labor, Natural Resources, Occupations, and Property—the Preemption Clause provides:

> PREEMPTION. Unless expressly authorized by another statute, a municipality or county may not adopt, enforce, or maintain an ordinance, order, or rule regulating conduct in a field of regulation that is occupied by a provision of this code. An ordinance, order, or rule that violates this section is void, unenforceable, and inconsistent with this code.

TRCA §§ 5–6, 8–10, 13–15. Thus, under the Preemption Clause, if a provision of one of the eight covered subject-matter codes occupies a certain field of regulation, then cities like Houston, San Antonio, and El Paso cannot adopt, enforce, or maintain a local law that regulates conduct in that field unless expressly authorized to do so by another statute.

---

[1] In light of our holdings on the first two elements, we decline to reach the third element (redressability).

*The Enforcement Clause*

The Enforcement Clause creates a private cause of action for any person injured by a preempted local law. It provides:

> LIABILITY FOR CERTAIN REGULATION. Any person who has sustained an injury in fact, actual or threatened, from a municipal or county ordinance, order, or rule adopted or enforced by a municipality or county in violation of [the Preemption Clause] has standing to bring and may bring an action against the municipality or county . . . .

*Id.* § 7. The term "person" is broadly defined to include "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, agency or instrumentality, public corporation, any legal or commercial entity, or protected or registered series of a for-profit entity." *Id.*

In an action brought under the Enforcement Clause, the claimant is entitled to recover declaratory and injunctive relief, costs, and fees. *Id.* The claimant must, however, provide the municipality or county with notice of their claim at least three months before filing suit. *Id.* The notice must reasonably describe (1) the injury claimed and (2) the ordinance, order, or rule that caused the injury. *Id.*

**The Cities' Declaratory Judgment Action**

Before the Act took effect, Houston sued the State of Texas under the UDJA, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, asserting that the Act is unconstitutional both on its face and as applied to Houston and its local laws. In its live pleading, Houston alleges that the Act:

4

- violates article XI, section 5 of the Texas Constitution (the Home Rule Amendment) by imposing "field preemption" rather than conflict preemption and by requiring local governments to prove the absence of a preemptive conflict;

- constitutes an improper amendment to article XI, section 5 in violation of article XVII, section 1 (establishing the procedure for amending the Constitution);

- is unconstitutionally vague in violation of article I, section 19 (the due-course-of-law provision) and article II, section 1 (the separation-of-powers provision);

- unconstitutionally delegates power to the courts to determine what laws are preempted in violation of article II, section 1; and

- exceeds the Legislature's authority because neither the Texas Constitution nor the police power allow the Legislature to limit by statute the power of home-rule cities to adopt local laws that do not conflict with existing state law.

San Antonio intervened and asserted its own UDJA claim against the State. El Paso later joined in San Antonio's petition. Unlike Houston, these cities sought only a declaration that the Act facially violates the Home Rule Amendment and due-process guarantees by failing to preempt local law with "unmistakable clarity."

The State filed a plea to the jurisdiction on a variety of grounds, including standing, ripeness, and immunity.[2] Houston filed a traditional summary-judgment motion on every ground stated above.

Following a hearing, the trial court rendered a final judgment denying the State's plea and granting Houston's motion for summary judgment. The judgment declared that the Act "in its entirety is unconstitutional—facially, and as applied to Houston as a constitutional home rule city and to local laws that are not already preempted under article XI, section 5 of the Texas

---

[2] Although styled as a motion to dismiss, the instrument is, in substance, a plea to the jurisdiction, and we will construe it as such. *See City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 823 n.1 (Tex. App.—Austin 2014, no pet.).

5

Constitution." That declaration, the judgment further ordered, granted the relief requested by San Antonio and El Paso and resolved their claims. The State appeals.

## STANDING

On appeal, the State argues that the trial court erred in denying its jurisdictional plea because the Cities failed to meet their burden to show standing.

### Applicable law and standard of review

"Standing" refers to a party's "justiciable interest" in a case. *Heckman v. Williamson County*, 369 S.W.3d 137, 153 (Tex. 2012). Under Texas law, "[a] plaintiff must have standing to sue." *State v. Zurawski*, 690 S.W.3d 644, 657 (Tex. 2024).

The doctrine of standing derives from our Constitution's separation-of-powers provision, "which denies the judiciary authority to decide issues in the abstract," and from its open-courts provision, "which provides court access only to a 'person for an injury done him.'" *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (quoting *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018)). Thus, standing is a component of subject-matter jurisdiction and a constitutional prerequisite to suit. *City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 616 (Tex. App.—Austin 2016, no pet.). For a court to exercise jurisdiction over a claim, the plaintiff must establish standing to sue. *In re Abbott*, 601 S.W.3d at 805.

To establish standing, the plaintiff must satisfy three elements. First, the plaintiff must show it "suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 808 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (cleaned up). Second,

6

the plaintiff must show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* Third, the plaintiff must show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *In re Abbott*, 601 S.W.3d at 808 (quoting *Lujan*, 504 U.S. at 561 (cleaned up). "Such a showing ensures the existence of 'a real controversy between the parties' that 'will be actually determined by the judicial declaration sought.'" *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 690 (Tex. 2022) ("*MALC*") (quoting *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001)).

Whether a plaintiff has standing is a question of law subject to de novo review and properly raised in a plea to the jurisdiction. *See City of Austin*, 506 S.W.3d at 612, 616. When, as here, the plea challenges the pleadings, we review the plaintiff's live pleadings to determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* at 612–13. We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Id.* at 613. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Id.* If, however, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to re-plead. *Id.*

**Injury-in-fact**

We begin by considering whether the Cities have met their burden to show that they suffered an injury-in-fact—an invasion of a legally protected interest that is both concrete and particularized and actual or imminent. The Cities contend that they met their burden by alleging various pre-enforcement injuries. Specifically, the Cities contend that they met their burden by alleging that, as a result of the Act's enactment, they will have to:

- review their ordinances to determine which ones are preempted;

- refrain from maintaining and enforcing ordinances that are or might be preempted and, perhaps, repeal them;

- find ways to replace services or protections provided under preempted laws;

- endure uncertainty about which ordinances are preempted; and

- defend litigation in which parties challenge local laws as preempted.

The State argues that these allegations fail to show an injury-in-fact because they fail to show any actual injury from the Act's application. We agree with the State.

The Cities have asserted both facial and as-applied challenges to the Act. When a plaintiff asserts facial and as-applied challenges to the constitutionality of a statute, the plaintiff must first show that the statute's application in the particular context in which it has acted, or in which it proposes to act, would be unconstitutional.[3] *See Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982) (in facial challenge, court should "examine the complainant's conduct before analyzing other hypothetical applications of the law"); *Texas Dep't of Ins. v. Stonewater Roofing Ltd.*, 696 S.W.3d 646, 660 (Tex. 2024) (in suit challenging

---

[3] The only exception to this rule is a facial challenge based upon First Amendment free-speech grounds.

8

constitutionality of statute, court "must first examine the law as applied to [the challenger]'s conduct before considering other hypothetical application of the law"); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 548 (5th Cir. 2008) (explaining that under "the proper procedure for analyzing a facial vagueness challenge . . . the complainant's conduct should be analyzed before the court considers other hypothetical applications of the law").

In other words, to prevail on the facial challenge, the plaintiff must first prevail on the as-applied challenge—and thereby show that the statute is unconstitutional in all its applications *for the same reason* it is unconstitutional in its particular application to the plaintiff. *See id.*; *see also* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1327–28 (2000) (explaining that "determinations that statutes are facially invalid properly occur only as logical outgrowths of rulings on whether statutes may be applied to particular litigants on particular facts"). "For this reason, '[a]s-applied challenges are the basic building blocks of constitutional adjudication.'" *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) (quoting Fallon, 113 Harv. L.Rev. at 1328).

There are two reasons for this rule that are particularly relevant here, one legal and one prudential.

Legally, the rule ensures that the plaintiff suffered (or imminently will suffer) a concrete and particularized injury, which, in turn, ensures the court resolves an actual controversy and doesn't simply issue an advisory opinion. *See MALC*, 647 S.W.3d at 689 ("Under the Texas Constitution's separation-of-powers doctrine, courts lack jurisdiction to issue an advisory opinion . . . ."); *In re Abbott*, 601 S.W.3d at 807 (observing that Texas standing doctrine derives in part "from the Texas Constitution's provision for separation of powers among

the branches of government, which denies the judiciary authority to decide issues in the abstract . . . .").

Prudentially, the rule recognizes that concrete facts anchor the interpretive enterprise, since the meaning of statutes is not always obvious and frequently emerges best through case-by-case applications. *See In re Commitment of Fisher*, 164 S.W.3d 637, 655 (Tex. 2005) ("Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks. Facial adjudication carries too much promise of premature interpretation of statutes on the basis of factually bare-bones records.") (quoting *Sabri v. United States*, 541 U.S. 600, 608–09 (2004)) (cleaned up). This strikes us as especially true when, as here, the meaning of a statute can only be discerned by applying it to *another statute*.

To establish an injury-in-fact, then, the Cities must show an injury arising from the Act's unconstitutional application *to them*—that the Act's application to them violates their rights in some specific way and thereby causes them some specific injury. *See Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015) ("To challenge a statute, a plaintiff must both suffer some actual or threatened restriction under the statute and contend that the statute unconstitutionally restricts the plaintiff's rights." (quoting *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995) (cleaned up))).

For purposes of our injury analysis, the Cities' various challenges to the Act fall into two broad categories: (1) challenges based on the Act's alleged violation of some version of the Cities' right to adopt, enforce, and maintain certain local laws,[4] and (2) challenges based on

---

[4] These challenges include Houston's related claims that (1) the Act violates the Home Rule Amendment by imposing "field preemption" rather than conflict preemption (and therefore

10

the Act's alleged violation of some version of the Cities' right to fair notice of which local laws are preempted.[5]  Therefore, to establish an injury-in-fact, the Cities must show the Act's application to a specific local law would be unconstitutional—either because the Act unconstitutionally preempts the local law (and therefore violates the Cities' right to adopt, enforce, and maintain the law) or because it is unclear whether the Act preempts the law (and the Act therefore fails to provide fair notice).  *See State v. Zurawski*, 690 S.W.3d 644, 658 (Tex. 2024) ("To directly challenge the constitutionality of a statute, a plaintiff must allege that the plaintiff . . . intends to engage in conduct that is arguably constitutionally protected but not permitted by the statute . . . .").

San Antonio and El Paso fail to identify a single local law to which the Act's application would be unconstitutional.  The closest Houston comes to doing so is in alleging that the Act might preempt its pay-or-play insurance program.[6]  But it is unclear from Houston's pleadings whether Houston is arguing that the Act's possible preemption of its pay-or-play program violates Houston's right to enforce and maintain the Act or violates Houston's right to fair notice.  The Cities' have alleged various pre-enforcement injuries, but none of these injuries arise from a specific application of the Act to a specific local law.  *Cf. Roark & Hardee*,

---

violates Houston's right to pass local laws that are within the preempted field but otherwise consistent with state law), (2) the Act constitutes an improper amendment (by imposing field preemption), and (3) the Act exceeds the Legislature's authority because Legislature lacks the power to limit by statute the power of home-rule cities to adopt local laws that do not conflict with existing state law.

[5]  These challenges include Houston's claim that the Act is unconstitutionally vague and unconstitutionally delegates power to the courts and San Antonio and El Paso's claim that the Act fails to preempt local laws with "unmistakable clarity."

[6]  Houston's pay-or-play program requires that City contractors either protect their workers with insurance covering their work on City projects or pay into a fund that helps defray costs associated with caring for uninsured citizens in Houston and Harris County.

11

522 F.3d at 547 (examining statute's facial validity "[i]n the context of pre-enforcement review . . . is often difficult, perhaps impossible, because facts are generally scarce").

Thus, the Cities have failed to allege a concrete and particularized actual or imminent injury arising from the Act's unconstitutional application to them. In the absence of such a concrete dispute, the trial court's declaratory judgment amounts to an advisory opinion that essentially declares: If the Act is applied to the Cities in a future, hypothetical scenario, that application would be unconstitutional. But "[a] court does not strike down a law as unconstitutional based on a hypothetical situation." *Zurawski*, 690 S.W.3d at 668. We hold that the Cities failed to meet their burden to show that they suffered an injury-in-fact.

**Traceability**

We now turn to the second element of standing: traceability. The Cities contend that their injuries are fairly traceable to the State of Texas for two independent reasons: (1) because the Legislature enacted the Act and (2) because the State qualifies as a "person" under the Act and therefore has the right to bring an enforcement action against the Cities.

***The Cities' injuries are not fairly traceable to the State by virtue of the Legislature having enacted the Act.***

The Texas Supreme Court has made clear that "the State is not automatically a proper defendant in a suit challenging the constitutionality of a statute merely because the Legislature enacted it." *MALC*, 647 S.W.3d at 697; *see Paxton v. Simmons*, 640 S.W.3d 588, 603 (Tex. App.—Dallas 2022, no pet.) (holding, in suit challenging constitutionality of Texas Property Code provision, that plaintiff failed to satisfy traceability element in alleging that "the State of Texas, via its legislature, directly passed the challenged statute and thus appear[ed] to have the most relevant connection to defending the constitutionality of that law"). Instead, the

12

State is a proper defendant only if there exists "an 'enforcement connection' between the challenged provisions and the State itself." *MALC*, 647 S.W.3d at 696–97; *see Engel v. Texas Dep't of Ins.-Div. of Workers' Comp.*, No. 03-23-00077-CV, 2024 WL 3432250, at *4 (Tex. App.—Austin July 17, 2024, pet. denied) (mem. op.) (holding, in suit challenging constitutionality of agency rule, that no enforcement connection existed between challenged rule and "State of Texas" when State did not enforce statute under which rule was promulgated).

The Cities contend that the existence of an enforcement connection is unnecessary when, as here, the suit challenges the validity of a statute. In that case, the Cities insist, "the Supreme Court has held that there is a justiciable connection *with the drafter*" regardless of whether the drafter has a role in enforcing the statute. We disagree.

The case cited by the Cities, *Texas Board of Chiropractic Examiners v. Texas Medical Association*, 616 S.W.3d 558 (Tex. 2021) ("*TBCE*"), does not make that holding or otherwise support their position. In *TBCE*, the Texas Board of Chiropractic Examiners adopted a scope-of-practice rule, as part of its "enforcement" of the Texas Chiropractic Act (TCA), authorizing chiropractors to perform an eye-movement test for neurological problems. *Id.* at 560, 563. The Texas Medical Association then sued the Board, seeking a declaration that the rule was invalid because it exceeded the chiropractic scope of practice as defined by the TCA. *Id.* at 560. The Association alleged that some of its member physicians would suffer economic harm due to increased competition from chiropractors, which the Texas Supreme Court held sufficiently alleged the concrete injury required for standing. *Id.* at 567. The alleged injury, the Court explained, was "directly traceable to the Board's rule-making and would be redressed . . . by judicial invalidation of the challenged rules." *Id.*

13

Thus, *TBCE* holds that an *examining board* is the proper defendant in a suit challenging the validity of a *rule* the board adopts specifically "for the enforcement" of state law. *TBCE* does not hold that the *State* is a proper defendant in a suit challenging the validity of a *statute* enacted by the *Legislature*. Indeed, since *TBCE* was decided, the Texas Supreme Court has expressly rejected that notion, holding in *MALC* that "the State is not automatically a proper defendant in a suit challenging the constitutionality of a statute merely because the Legislature enacted it." 647 S.W.3d at 697. We hold that the Cities' injuries are not fairly traceable to the State merely because the Legislature enacted the Act.

### *No enforcement connection exists between the Act and the State of Texas.*

As an alternative basis for traceability, the Cities contend that an enforcement connection exists between the State and the Act because "the State of Texas," as a "legal entity," qualifies as a "person" under the Act and may therefore sue the Cities for injuries sustained from preempted regulations. Assuming without deciding that the State qualifies as a "person" under the Act, this is insufficient to show the existence of an enforcement connection between the State and the Act. If an enforcement connection exists between the Act and the State by virtue of the State qualifying as a "person," then an enforcement connection exists between the Act and every individual, business, and entity that qualifies as a "person," regardless of whether that party has any intention of bringing an action under the Act.

Clearly, that can't be the case. But it does highlight an important feature of the Act: it is enforced through a private right of action, which makes it distinguishable from other statutes that are enforced exclusively by an administrative agency or other arm of the State through administrative proceedings, criminal prosecutions, and the like.

14

When a governmental entity is specifically assigned the role of enforcing a statute, an enforcement connection exists between the entity and the statute. *See MALC*, 647 S.W.3d at 696 (in suit challenging reapportionment law, "enforcement connection" exists between law and Governor, "whose duties include ordering elections for officers of the state government and members of the United States Congress," and between law and Secretary of State, "who is the 'chief election officer of the state,'" but not between law and State itself, which "does not enforce election laws"). But when a governmental entity simply has the right to bring a private cause of action for violations of a statute, and that right is enjoyed by other parties, no enforcement connection exists between the governmental entity and the statute absent evidence that the government entity has already exercised or likely will exercise that right.

To establish an enforcement connection, then, the Cities must show that the State will likely sue them under the Act. *See In re Abbott*, 601 S.W.3d at 812 ("To establish standing based on a perceived threat of injury that has not yet come to pass, the threatened injury must be certainly impending to constitute injury in fact; mere allegations of possible future injury are not sufficient." (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (cleaned up))).

The Cities have failed to make such a showing. They do not allege that the State has threatened to sue. Nor have they made any allegation otherwise indicating that the State likely will sue. And the State, for its part, has disavowed any right to bring an action under the Act. *See In re Abbott*, 601 S.W.3d at 812 (holding, in judge's action for declaratory and injunctive relief challenging constitutionality of executive order suspending certain statutes authorizing trial judges to release jail inmates with violent histories, that plaintiff judges' "speculation" that prosecutions for failure to follow order would "somehow materialize" insufficient to establish credible threat of prosecution when State conceded that it would not

enforce executive order through prosecutions); *Ector Cnty. All. of Businesses v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at \*10 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.) (holding, in suit challenging constitutionality of COVID-19 restrictions issued by Governor under Texas Disaster Act, that traceability element was not satisfied when plaintiff bar owners "did not plead that the Governor or the State ever threatened to enforce [the restrictions], and the Governor and the State . . . conceded that they d[id] not have the authority to do so").

To the extent the Cities attempt to base their standing on their exposure to notice and litigation by any person claiming injuries from preempted regulations, the Cities "confuse[] the *statute*'s immediate coercive effect . . . with any coercive effect that might be applied by the *defendant*[] . . . ." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (holding, in suit challenging constitutionality of statute making abortion providers liable to patients in tort for damages caused by abortions, that plaintiff providers' "assertion that they w[ould] be forced to discontinue offering legal abortions to patients because of the untenable risks of unlimited civil liability" was insufficient to show enforcement connection between statute and state's governor and attorney general).

We hold that the Cities have failed to show that their alleged injuries are fairly traceable to the State. In light of our holdings on the elements of injury-in-fact and traceability, we need not address whether the Cities met their burden to show the third element of standing, redressability.

**CONCLUSION**

The Cities have requested that, in the event we hold their pleadings to be jurisdictionally defective, we remand to the trial court to afford them the opportunity to amend.

16

*See City of Austin*, 506 S.W.3d at 613. The Cities are not entitled to a remand because at least one of the defects cannot be cured: No amount of repleading will make the State of Texas a proper defendant.

We hold that the Cities' live pleadings affirmatively negate the Cities' standing to sue. We reverse the trial court's final judgment and render judgment dismissing the suit without prejudice for lack of subject-matter jurisdiction.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Reversed and Rendered

Filed: July 18, 2025

17