

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IRAAN-SHEFFIELD INDEPENDENT SCHOOL DISTRICT, | § | |
| Appellant, | § | No. 08-19-00090-CV |
| v. | § | Appeal from the |
| KINDER MORGAN PRODUCTION COMPANY, LLC, Individually And As Successor In Interest To KINDER MORGAN PRODUCTION COMPANY, LP, | § | 83rd District Court |
| | § | of Pecos County, Texas |
| | § | (TC# P-7943-83-CV) |
| Appellee. | § | |

## DISSENTING OPINION

Based on two independent grounds, I would conclude the trial court properly granted Kinder Morgan's plea to the jurisdiction against Iraan-Sheffield Independent School District's (ISISD) taxpayer fraud claim. First, before seeking judicial review of the claim, ISISD failed to exhaust administrative remedies required by the Tax Code. And second, even if we assume that ISISD properly presented such claim to the Appraisal Review Board of Pecos County (ARB), it otherwise failed to timely file the fraud claim in the district court. Because the trial court could have based its grant of the plea to the jurisdiction on either ground, I would conclude that either one supports the trial court's ruling. Thus, I would affirm the trial court's ruling. For these reasons, I respectfully dissent.

**A. Failure to exhaust administrative remedies**

In its plea to the jurisdiction, and now on appeal, Kinder Morgan argues that ISISD failed to exhaust its administrative remedies with regard to a claim of taxpayer fraud because it did not plead, nor attempt to prove at the administrative hearing held by the ARB, that Kinder Morgan engaged in any fraud relative to records submitted for the tax years at issue. Kinder Morgan points out that ISISD has been consistent about the relief it sought—the re-appraisal and back-appraisal of Kinder Morgan's Pecos County mineral property for tax years 2013-2018. But comparing how ISISD engaged in the administrative review process and how it sought juridical review of the board's denial of its claim, Kinder Morgan contends that ISISD was not consistent with its alleged basis for obtaining the relief it sought.

Specifically, Kinder Morgan contends that ISISD abandoned its original basis for obtaining its desired relief and then adopted an entirely new theory built on the allegation that Kinder Morgan had committed fraud or made intentional misrepresentations relative to the appraisal process. Kinder Morgan points out that ISISD's claim was brought under the Tax Code as an ad valorem tax case. Recognizing that iterative pleading may be permissible in a standard civil suit, it argues that such practice does not apply in the context of such suit. Unlike a standard civil suit, a tax suit must comply with procedural and administrative prerequisites mandated by law. In this context, Kinder Morgan argues the district court's subject matter jurisdiction wholly depends upon whether ISISD complied with the regulatory scheme of the Tax Code. Ultimately, Kinder Morgan contends that ISISD's attempt to assert a new cause of action in its Second Amended Petition violated procedural requirements of the Tax Code, and those violations deprived the trial court of subject matter jurisdiction over the claim.

In response, ISISD contends that the district court erred to the extent it concluded that

ISISD failed to exhaust its administrative remedies with regard to a claim of taxpayer fraud. ISISD argues that it fully complied with all administrative requirements including the requirement to appear before the ARB on its challenge petition. It points out that it presented documentation referencing taxpayer misrepresentation and also raised the "25 Percent Presumption Rule" before the board. Additionally, ISISD also points out that counsel for Pecos County Appraisal District (PCAD) not only discussed the presumption rule at the hearing but also mentioned the case of *Beck & Masten Pontiac-GMC, Inc. v. Harris Cnty. Appraisal Dist.*, 830 S.W.2d 291, 296 (Tex. App.—Houston [14th Dist.] 1992, writ denied), which is known for its discussion of taxpayer fraud.

Based on these arguments, the majority concludes that ISISD exhausted its administrative remedies after it determined that "the issue of fraud was intensively litigated, considered, and rejected by the ARB." Because I ultimately conclude that ISISD presented a theory of presumed fraud, not intentional taxpayer fraud, I disagree. On this record, I would conclude the trial court lacked subject matter jurisdiction over the taxpayer fraud claim filed in district court given that such claim was not first presented to the ARB for its determination.

Texas trial courts are courts of general jurisdiction. *Subaru of Am.*, *Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). The Texas Constitution provides that such courts are presumed to have subject matter jurisdiction unless a contrary showing is made. *See* TEX. CONST. art. V, § 8; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Such showing may arise due to the legislature bestowing exclusive original jurisdiction on an administrative body. *See Subaru*, 84 S.W.3d at 220. As the Supreme Court of Texas explained, "[a]n agency has exclusive jurisdiction 'when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem

3

to which the regulation is addressed.'" *Id.* at 221 (quoting Andrew G. Humphrey, Comment, *Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze*, 52 U. CHI. L. REV. 1090, 1107 n.3 (1985)). Whether an agency has exclusive jurisdiction depends on statutory interpretation. *Id.* "Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action." *Id.* Until such prerequisite is met, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Id.*

The purpose of the exhaustion-of-remedies requirement is to allow the agency to resolve disputed issues of fact and policy and to ensure that the appropriate body adjudicates the dispute. *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 780 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006). "The exhaustion doctrine serves as a timing mechanism to ensure that the administrative process runs its course." *See City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). Absent exhaustion of administrative remedies, a trial court must dismiss the case. *See Subaru*, 84 S.W.3d at 221.

Relative to this case, "[t]he Tax Code is a pervasive regulatory scheme, vesting appraisal review boards with exclusive jurisdiction to decide protests and challenges as permitted under chapters 41 and 42." *City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 617 (Tex. App.—Austin 2016, no pet.). Pursuant to that scheme, the Tax Code provides taxing units, like the ISISD of this case, "with a limited statutory right to challenge certain actions of the appraisal district before a local review board and with standing to seek judicial review of the review board's determination on its challenge in district court." *Id.*; *see also* TEX. TAX CODE ANN. §§ 41.03—.07, 42.031, 42.21. For example, a taxing unit may challenge "the level of appraisals of any category of property in the district . . . but not the appraised value of a single taxpayer's

4

property." *See* Act of May 28, 1999, 76th Leg., R.S., ch. 631, § 10, 1999 Tex. Gen. Laws 3191, 3196 (amended 2019) (current version at TEX. TAX. CODE ANN. § 41.03(a)(1)).[1] The challenge is initiated by the taxing unit's filing of a challenge petition with the appraisal review board, *see id.* § 41.04, which subsequently conducts a hearing on that petition, *see id.* § 41.05, determines the challenge, and makes its decision by written order, *see id.* § 41.07. The taxing unit may then appeal the review board's decision to the district court in the county in which the review board is located. *Id.* §§ 42.031 (right of appeal by taxing unit), 42.21 (petition for review). To properly invoke the subject-matter jurisdiction of the district court, however, the taxing unit must exhaust its administrative remedies before filing its suit for judicial review. *City of Austin*, 506 S.W.3d at 618.

Applicable to a taxing unit challenge, section 41.04 of the Tax Code provides that a taxing unit initiates a challenge before an appraisal review board by filing a petition that includes "an explanation of the grounds for the challenge." TEX. TAX CODE ANN. § 41.04. Based on the challenge, the appraisal review board then schedules a hearing, at which the taxing unit is "entitled to an opportunity to appear to offer evidence or argument." *Id.* § 41.05. Here, the central issue of the dispute is whether or not the ISISD fulfilled this obligation, "to appear to offer evidence or argument" to the review board, under section 41.05 of the Tax Code. *Id.*

This identical statutory language also appears in a statute applicable to a taxpayer protest which was construed by the Supreme Court of Texas in *Webb Cty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 953 (Tex. 1990). As a result, *New Laredo Hotel* provides guidance on the meaning of what is required for exhaustion of remedies in the analogous context of a taxpayer protest suit. *Id.* at 953—54. In *New Laredo Hotel*, the taxpayer did not appear before the appraisal review board at all. *Id.* at 954. Instead, the taxpayer argued that appearance before the

---

[1] Because the underlying suit was filed and heard in 2018, the parties cite to the prior version of section 41.03 of the Tax Code, which remained in effect until January 1, 2020.

board was optional and therefore not a prerequisite to filing suit in district court. *Id.* at 953. The Supreme Court of Texas disagreed, stating: "Chapter 41 of the Texas Tax Code assumes appearance. Put simply, it is not a question of *whether* the taxpayer must appear, but rather *how* the taxpayer will make its appearance." *Id.*

The Supreme Court went on to explain that a protest "merely initiates the process while the affidavit or appearance provides the evidence on which the protest will be determined." *Id.* at 954. It further explained that "[t]he Board must have evidence before it from which it can determine if the property was overvalued[,]" and, "[i]f the taxpayer presents no evidence, the appraisal review board has nothing before it on which to make a determination, which is a prerequisite to judicial review." *Id.* at 953—54. The Supreme Court clarified that "[t]he intent of the administrative review process is to resolve the majority of tax protests at this level, thereby relieving the burden on the court system." *Id*. at 954. Thus, as a corollary of that rule, the Court further explained that "judicial review of administrative orders is not available unless all administrative remedies have been pursued to the fullest extent." *Id.* (citing *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 683 (Tex. 1983)). In short, the Supreme Court admonished that the administrative review process is not "merely one more hoop to jump through before appealing to district court." *Id.*

In *City of Austin*, our sister court applied the guidance of *New Laredo* to a taxing unit's challenge of appraisal valuations. 506 S.W.3d at 611. In *City of Austin*, the city challenged the appraisal district's level of appraisals for the 2015 tax year on certain categories of real property in Travis County. *Id.* Unlike the taxpayer protest discussed in *New Laredo*, the city in fact made an appearance before the appraisal review board. *Id.* When doing so, however, it deliberately chose not to present its challenge on the merits. *Id.* at 619. Instead, the city presented a joint motion along

6

with the appraisal district which asked the appraisal review board to enter an order denying the challenge petition. *Id.* The attorney for the review board explained to board members they had agreed to this course of action "in order for the parties to proceed to district court." *Id.* Adding to this explanation, the city further stated it considered the district court to be a better forum for the dispute. *Id.* Ultimately, attorneys for the appraisal district and the city each presented a statement to the board, arguing the board should deny the city's challenge petition "so that the Appraisal District could move forward on certifying the tax rolls and so that the parties could proceed in district court." *Id.* Once the challenge petition was denied, the city then attempted to appeal that ruling to the district court. *Id.*

In filing suit for judicial review, the city alleged the appraisal district's 2015 level of appraisals of certain categories of properties was unequal when compared to other categories of property. *Id.* at 611. In asking for relief, the city requested that the district court order a reappraisal of all such properties within the county. *Id.* Eventually, several commercial property owners appeared in the case, waived service, and answered as defendants in the lawsuit. *Id*. One such party subsequently filed a traditional motion for summary judgment seeking dismissal of the city's claims based on the court's lack of subject matter jurisdiction. *Id.* at 611—612. Among other arguments, the movant argued the city had failed to exhaust its administrative remedies by failing to present evidence at the review board hearing. *Id*. at 612. The district court granted summary judgment against the city and dismissed the suit for lack of jurisdiction. *Id*. On review, the Austin Court of Appeals held that—because the city affirmatively requested that the review board deny its challenge petition—the city had failed to "appear," as contemplated by the Texas Supreme Court, and thus it failed to exhaust its administrative remedies. *Id.* at 619—20 (citing *New Laredo Hotel*, 792 S.W.2d at 954). The court referenced *New Laredo Hotel's* concern as centering "not on

7

the taxpayer's lack of actual presence [at an ARB hearing] but on the fact that, as a consequence, the review board had not been provided any opportunity to make a decision on the merits of the protest." *Id.* at 619.

Here, the record demonstrates that, although attorneys and a representative from ISISD attended the hearing on ISISD's challenge petition, ISISD did not present a case on the merits of its challenge. In its introductory remarks to the ARB, ISISD explained its challenge related to the undervaluation of certain oil and gas property in Pecos County, particular property owned by Kinder Morgan. Even so, at the administrative hearing it did not attribute that alleged undervaluation to any intentional misrepresentation or fraud on Kinder Morgan's part. At the end of ISISD's remarks, PCAD pointed out that *if* ISISD was asserting fraud, it had a heavy burden to prove both that fraud was committed, and that such fraud resulted in an incorrect appraisal. PCAD's point was that, for ISISD to challenge the appraisal of a single taxpayer—i.e., Kinder Morgan—it was required to prove both that taxpayer fraud was committed and that the appraisals were incorrect because of that fraud. Replying, ISISD disagreed with PCAD's description of the applicable law and insisted that "all we have to do is prove that the values that were found by Pickett and submitted to the ARB through the appraisal board, that those were incorrect[.]"

Providing additional background to its challenge, ISISD then discussed the fact that the Pickett organization, the commercial firm that appraised the property at issue here, had made an $84 million error in appraising Category G property in another county.[2] ISISD then explained,

> What we want is the accuracy of the value of the mineral interests in Pecos County,
> particularly in the jurisdiction of the school district, and we're not looking for

---

[2] At the hearing, ISISD repeatedly referred to proceedings in Scurry County concerning alleged appraisal errors in that county. Although these references were made, ISISD cites no authority permitting this Court to consider claims, arguments, or evidence in proceedings outside of this lawsuit to determine what claims ISISD raised before the ARB in Pecos County. *See Kinder Morgan SACROC, LP v. Scurry Cnty.*, 589 S.W.3d 889, 897 (Tex. App.—Eastland 2019), *rev'd on other grounds*, 622 S.W.3d 835, 838 (Tex. 2021) (addressing Kinder Morgan's challenge of the taxing unit's legal services contract and TCPA dismissal motion).

8

liability, we're not looking for wrongdoing, we're not trying to hold anybody responsible for any type of purposeful wrongdoing, anything like that.

The factual basis of ISISD's challenge, as explained at the hearing, was that ISISD had hired a commercial appraiser who inserted figures derived from Kinder Morgan's public filings into a formula mandated by law. The resulting valuations were significantly higher than those reached by PCAD and Thomas Y. Pickett Company (Pickett), the organization that conducted the challenged appraisals. In addition, ISISD looked at valuations for oil and gas properties in Pecos County owned by other companies and found those valuations to be "more consistent with reality." At the administrative hearing, ISISD informed the board that its retained appraiser concluded that the Kinder Morgan property was undervalued by $4.7 billion.

Despite these introductory statements and remarks, ISISD did not present its retained appraiser, or any other witness for that matter, at the ARB hearing. Instead, its counsel gave a presentation based on documents prepared by its retained appraiser. PCAD cautioned the ARB that the documents on which ISISD relied were hearsay and lacking in probative value because they were not introduced through any witness, and because PCAD was unable to conduct any cross-examination concerning their content and accuracy.

Focusing on the critical issue of whether ISISD presented a claim of taxpayer fraud to the ARB, ISISD's first mention of "fraud" was made in the context of discussing the sheer size of the alleged undervaluation of Kinder Morgan's property. It argued that "by statute"[3] there is "a general position that if taxes were over 25 percent underpaid, then that is considered to be fraud or misrepresentation that the Panel or a court would consider." ISISD later generally explained that property may be "omitted" from appraisal records ab initio if an erroneous valuation results from fraud or misrepresentation on the part of the taxpayer. However, ISISD did not apply this general

---

[3] ISISD did not identify the statute to which it was referring.

statement of law to the case before the ARB. Rather, in discussing fraud in the context of the actual case, ISISD again did not assert that Kinder Morgan committed any intentional misrepresentation or fraud that caused its property to be undervalued. As demonstrated by the following statements, it returned instead to its position that fraud was established merely by showing an underpayment of more than 25%:

> There is a presumption that if an audit shows 25 percent or more, that that is a gross error and, therefore, our position is that we have shown 25 percent. So this argument about fraud, for one, the cases are clear, it's not common law fraud, it's not statutory fraud which have high degrees of elements. Instead in [] that case and the other cases it discusses, it has to do with misrepresentation, and we think that by showing there's a 25 percent— more than 25 percent shortage of what was paid, then we have met that threshold . . . .

For its part, PCAD presented testimony from Steven Campbell, Pickett's president, explaining Pickett's valuation of Kinder Morgan property and why its values for that property did not compare with the values attributed to other Category G properties in the area. In the course of that testimony, PCAD showed Campbell a dictionary definition of fraud and asked him whether, based on his experience, he thought he would be able to spot fraud. Campbell responded that he thought he would notice something of the magnitude alleged by ISISD.

In closing, ISISD reiterated its position that application of a purported "25% rule" demonstrates fraud. It then stated that "either there was an error by Pickett or there was a misrepresentation by Kinder Morgan," and the way to determine which occurred would be to order back-appraisals. It concluded that the ARB should order such back-appraisals because of the $84 million error (which the evidence revealed was actually an error and not the product of fraud) that occurred in another county: "That should be a red flag that the appraisals in the same area where the $84 million error occurred, those should be reappraised and looked at with a stricter eye, and that's what we are asking [] this Panel to do."

PCAD's closing statement denied that there was any fraud and specifically addressed

10

ISISD's "25% rule" argument. It urged that that rule had no application because the 25% threshold applies to the underpayment of taxes, not undervaluation, as was the case before the board. PCAD further argued that, if there had been a 25% discrepancy, the Comptroller, who has authority over underpayments, would have discovered it. It declared that "there is no fraud proven or even insinuated here." Finally, PCAD turned its attention to a general discussion of the *Beck & Masten* fraud case. *See Beck & Masten*, 830 S.W.2d at 291. After setting out the facts of that case, PCAD advised the ARB to view its holding (that property is omitted from appraisal records if it is undervalued as a result of taxpayer fraud) with some skepticism because of its potential to disrupt the entire property tax scheme. PCAD advised instead that the ARB strictly construe and apply the Tax Code.

In total, the hearing transcript reveals that the theory of fraud ISISD presented to the ARB was not the same theory it presented to the district court. At the ARB, ISISD relied on a theory of presumed fraud based on a purported "25% rule." To that claim, Kinder Morgan argues that this "rule" derives from a statute that ISISD misconstrues and misapplies. Section 111.205 of the Texas Tax Code provides that gross error in a tax report "means that, after correction of the error, the amount of tax due and payable exceeds the amount initially reported by at least 25 percent." TEX. TAX CODE ANN. § 111.205(b). As Kinder Morgan notes, the statute, by its plain language, applies to a taxpayer's underpayment of taxes, not to an appraisal district's undervaluation of property. It therefore argues it has no application to this case. In addition, even if the statute were to apply, it does not equate a "gross error" with fraud as ISISD claims by its argument. *Id.* On the contrary, the statute expressly differentiates between a false or fraudulent tax report and one that contains a "gross error." *See id.* § 111.205(a)(1) (false or fraudulent report), (a)(3) (report containing "gross error").

11

Kinder Morgan's argument concerning ISISD's misinterpretation or misapplication of section 111.205, however, goes to the merits of ISISD's claim that application of its alleged "25% rule" demonstrates fraud. In the context of this jurisdictional review, however, our task is limited to deciding what claims ISISD presented to the ARB, not whether those claims have merit. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (stating courts must confine their evidentiary review to the jurisdictional issue). Even if we were to conclude that ISISD asserted a claim of presumed fraud before the ARB, I would otherwise conclude that such claim is not the type of fraud that ISISD now alleges in the district court and before this Court.

As recognized by ISISD in its statement of the issues on appeal, the relevant claim it presented in the trial court when seeking judicial review is one of *taxpayer* fraud. In the context of this case, that means fraud committed by Kinder Morgan. But the record shows that ISISD steadfastly denied in the ARB hearing that it was required to show that Kinder Morgan committed fraud as defined by the common law. Even so, ISISD does not reconcile its insistence before the ARB that it was *not* required to show such fraud with its current insistence that it presented a claim of fraud to the ARB.

In any event, ISISD's own case authority refutes the contention that it was not required to make a showing of fraud as defined by the common law. ISISD heavily relies on the case *Beck & Masten* out of the Fourteenth Court of Appeals. In *Beck & Masten*, the court observed that, while an appraisal district's *remedy* is not established through a common law action for fraud, nonetheless, an action of "fraud goes to the issue of whether the assessment was void." 830 S.W.2d at 295. And in the context of determining that the assessment in that case was void, the court applied the elements of common law fraud, expressly noting that the taxpayer made false, material representations about the value of its inventory, and that the appraisal district relied on those

misrepresentations to its detriment. *Id.*

In my view, the focus of ISISD's presentation and argument at the ARB hearing was on alleged errors by the Pickett firm in appraising Kinder Morgan's property, as well as its appraisal of like property in other counties. ISISD explained, in general terms, that if a taxpayer commits fraud that results in an erroneous appraisal, the appraisal is void ab initio, and the property may be considered omitted or excluded from appraisal records. But the only claim of fraud it argued in relation to the actual circumstances of this case was presumed fraud derived from an alleged 25% rule. Again, when PCAD argued that ISISD could not challenge the appraisal of Kinder Morgan's property without proving that Kinder Morgan committed fraud, ISISD strongly disagreed.[4] At the hearing, ISISD argued:

- "[A]ll we have to do is prove that the values that were found by Pickett and submitted to the ARB through the appraisal board, that those were incorrect."

- "What we want is the accuracy of the value of the mineral interests in Pecos County, particularly in the jurisdiction of the school district, and we're not looking for liability, *we're not looking for wrongdoing*, we're not trying to hold anybody responsible for any type of purposeful wrongdoing, anything like that." [emphasis added].

In addition to not *arguing* that Kinder Morgan engaged in any intentional misrepresentation or fraud, ISISD presented no *evidence* from which any such intentional misrepresentation or fraud could even be inferred. At most, it briefly acknowledged the possibility that Kinder Morgan may have made some misrepresentation, though not necessarily an intentional misrepresentation or one otherwise rising to the level of fraud: "either there was an error by Pickett or there was a misrepresentation by Kinder Morgan." Even considering this passing reference as evidence, it lacks any probative value because it "does no more than create a mere surmise or suspicion and is so slight as to necessarily make any inference a guess." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d

---

[4] Even in the district court, ISISD initially took the position that requiring it to allege and prove that Kinder Morgan committed fraud was a "false requirement."

221, 228 (Tex. 2011); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

ISISD's entire factual presentation concerned comparisons between Pickett and PCAD's valuation of Kinder Morgan's property, a valuation of that property by an appraiser hired by ISISD, and valuations of property owned by other taxpayers in the county. Its entire legal argument concerned a theory of presumed fraud based on an alleged 25% or greater underpayment of taxes. But presumed fraud founded only on numbers does not evidence, or necessarily even implicate, intentional misrepresentation or fraud by the taxpayer, Kinder Morgan.[5] In the absence of any probative evidence of intentional misrepresentation or fraud, or even any argument identifying an intentional misrepresentation or fraud by Kinder Morgan and its impact on the appraisal process, nothing was presented to the ARB upon which it could decide the issue of taxpayer fraud. *See New Laredo Hotel*, 792 S.W.2d at 954 ("If the taxpayer presents no evidence, the appraisal review board has nothing before it on which to make a determination, which is a prerequisite to judicial review.").

The final basis for ISISD's contention that the ARB actually considered and decided the issue of taxpayer fraud is the following exchange that occurred at the close of the hearing:

> UNIDENTIFIED SPEAKER: I make a motion that we stay with our—our findings—
>
> UNIDENTIFIED SPEAKER: That no fraud was committed?
>
> UNIDENTIFIED SPEAKER: No fraud was committed.
>
> UNIDENTIFIED SPEAKER: Second.
>
> MR. SLAUGHTER: We have a motion and a second to stay with the finding that no fraud was committed.[6]

---

[5] ISISD contends that error by the appraiser does not preclude fraud by Kinder Morgan. We agree. But it was ISISD's burden to present to the ARB a claim that Kinder Morgan committed fraud. It simply did not do so.

[6] Although the motion was to "stay with" a finding of no fraud, the record does not reflect a prior decision or ruling from the ARB on that issue.

UNIDENTIFIED SPEAKER: Mr. Chairman, I think that in terms of just complying with the tax code requirements and preparing an order and everything, I think that, understanding the consensus of the Board, that [] I would rather see that phrased as a motion to deny the challenge.

MR. SLAUGHTER: Oh, okay.

UNIDENTIFIED SPEAKER: Then I make a motion to deny the challenge.

UNIDENTIFIED SPEAKER: Second.

MR. SLAUGHTER: Okay. That's better. Any other discussion? All in favor say aye.

(All answer)

MR. SLAUGHTER: Those opposed? Motion carries.

No doubt this exchange indicates that the ARB considered fraud in some fashion. Even so, the board could only have considered fraud in the sense of how such claim was presented by the ISISD—that is, a theory of presumed fraud against Kinder Morgan arising by virtue of an alleged 25% rule. Yet in the absence of any evidence or argument from ISISD that Kinder Morgan made an intentional misrepresentation, I do not interpret the board members' reference to the term "fraud" as having encompassed any claim beyond that which was actually presented.

Kinder Morgan contends that the ARB did not actually *decide* an issue of fraud because, although there was a seconded motion concerning fraud, no vote was taken on that motion. Rather, the ARB decided only that the challenge be denied. At most, I would conclude that a purported claim of presumed fraud was presented to and considered by the ARB. As a consequence, resolution of that claim is necessarily encompassed within the decision denying ISISD's challenge. But because no claim of actual fraud by Kinder Morgan was presented to and considered by the ARB, I agree with Kinder Morgan's argument that the ARB's denial of ISISD's challenge does not encompass a decision on the merits of any such claim.

Indeed, the undisputed facts contained in our record demonstrate that ISISD did not present

to the ARB a claim of taxpayer fraud, *i.e.*, a claim that the alleged undervaluation of Kinder Morgan's property was the result of fraud committed by Kinder Morgan. Because the claim was not presented, it was also neither considered nor decided by the ARB. ISISD consequently failed to exhaust its administrative remedies relating to its current claim of taxpayer fraud by Kinder Morgan. While the record shows that *whether* ISISD was required to show that Kinder Morgan made an intentional misrepresentation or had otherwise committed fraud was an issue discussed before the ARB, I would conclude that the *substance* of any such claim was not *in fact* presented for an ARB ruling. Accordingly, the issue of taxpayer fraud was not, and could not have been, considered by the board.

## B. Failure to challenge all grounds supporting the trial court's ruling

As an alternative ground for affirmance, Kinder Morgan contends that ISISD waived any error in the trial court's order granting its plea to the jurisdiction because it failed to challenge all possible grounds for that ruling. *See Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 790 (Tex. App.—Dallas 2012, pet. denied) (finding party waived error in dismissal of claims by failing to challenge one possible ground for court's ruling). I would also agree with this alternative argument.

In its plea to the jurisdiction, Kinder Morgan raised as an independent ground for dismissal that ISISD's claim that Kinder Morgan committed fraud was not timely raised in the district court. A petition for review of an appraisal review board's ruling must be filed in the district court within sixty days after the party receives notice that an appealable final order has been entered. TEX. TAX CODE ANN. § 42.21(a). The statute provides for amendment of the petition in only two circumstances—to correct or change the name of a party, or to identify or describe the property originally involved in the appeal. *Id.* § 42.21(e).

16

Kinder Morgan asserted in its plea to the jurisdiction that, while ISISD's original petition was timely filed, it did not contain a claim that Kinder Morgan committed fraud. It further argued that, even though such a claim was asserted in ISISD's Second Amended Petition, that pleading was filed long after the sixty-day filing period expired and, therefore, was untimely. In addition, it urged that the amended petition adding the fraud claim must be disregarded because it constitutes a substantive amendment that is not permitted under the express terms of section 42.21(e).

The trial court's order granting Kinder Morgan's plea to the jurisdiction does not specify the grounds on which it is based. "When a trial court issues an adverse ruling without specifying its grounds for doing so, the appellant must challenge each independent ground asserted by the appellee that fully supports the adverse ruling since it is presumed that the trial court considered all of the asserted grounds." *In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 888 (Tex. App.—El Paso 2012, orig. proceeding). In the absence of a challenge to all possible grounds, this Court "must accept the validity of the unchallenged independent grounds and affirm the adverse ruling." *Id.*

The timeliness of ISISD's assertion of fraud by Kinder Morgan is a possible ground supporting the trial court's broadly worded order granting that plea. ISISD, however, does not challenge that ground on appeal.[7] I would accept the validity of that ground and affirm the trial court's order on this additional basis. *See id.*

For all of these reasons, I respectfully dissent.

---

[7] Even in its reply brief, ISISD states only that its original petition was timely filed. It does not address the merits of Kinder Morgan's ground for dismissal—that fraud was not asserted until ISISD's Second Amended Petition, which was not filed within 60 days of notice of the ARB's ruling. In any event, error would be waived even if ISISD had addressed the matter in its reply brief. *See Burrus v. Reyes*, 516 S.W.3d 170, 182 n.8 (Tex. App.—El Paso 2017, pet. denied) ("An issue raised for the first time in a reply brief is not properly preserved for our review."). Furthermore, the Supreme Court of Texas has recently held that citation to *Beck & Masten* and *ExxonMobil* "does not equate to fair notice of the essential factual allegations giving rise to a claim for relief[.]" *Kinder Morgan SACROC, LP*, 622 S.W.3d at 850.

August 17, 2022

GINA M. PALAFOX, Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

18